UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BIDDEFORD INTERNET CORPORATION d/b/a GREAT WORKS INTERNET,<br><br>Plaintiff<br><br>v.<br><br>VERIZON NEW ENGLAND INC. d/b/a VERIZON MAINE,<br><br>Defendant | Civil No. 06-91-P-C |

Gene Carter, Senior District Judge

**ORDER ENFORCING ARBITRATION FOR
PART OF PLAINTIFF'S BREACH OF CONTRACT
CLAIM AND DENYING DEFENDANT'S MOTION TO DISMISS**

Now before the Court is the Motion of Defendant Verizon New England Inc. to Enforce Arbitration Agreement and to Dismiss Plaintiff's Complaint, or, Alternatively, to Stay Proceedings and to Compel Arbitration. *See* Docket Item No. 9. Plaintiff Biddeford Internet Group d/b/a Great Works Internet ("GWI") objects to Verizon's Motion. After considering the argumentation of the parties on the Motion, the Court will enforce the parties' agreement to arbitrate that part of their dispute arising after February 1, 2005 and deny Verizon's Motion to Dismiss.

**Rule 12(b)(6) Legal Standard**

When deciding a motion to dismiss under Rule 12(b)(6), the court accepts the well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff.

*Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 473 (1st Cir. 2002); *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir. 1993). The defendant is entitled to dismissal for failure to state a claim only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000) (citations omitted).[1]

## I. FACTS

This case arises out of a dispute between GWI and Verizon concerning the terms and conditions under which Verizon provides GWI, an internet service provider, access to a portion of Verizon's telecommunications network that allows GWI to provide broadband data services such as digital line subscriber ("DSL") over the same copper loop that Verizon uses to provide voice services to retail end-user customers. Such wholesale services furnished to GWI are referred to as high frequency portion of a copper loop ("HFPL") or "line sharing." Complaint ¶ 8. The parties entered into an Interconnection Agreement on October 3, 2001, which included a provision regarding the rates that GWI must pay Verizon for line sharing arrangements. *Id.* ¶ 6. The Interconnection Agreement between GWI and Verizon was approved by the Maine Public Utilities Commission ("MPUC") on December 18, 2001. *Id.* ¶ 7. The rates for line sharing established in the Interconnection Agreement are based on the Total Element Long-Run Incremental Cost ("TELRIC") methodology. *Id.* ¶ 10. The Interconnection Agreement has not been terminated by either party. *Id.* ¶ 21. GWI's Complaint alleges

---

[1] Verizon also moves to dismiss GWI's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Even if the assertion of a 12(b)(1) motion were proper in this case, it is unnecessary for the Court to address Verizon's alternative grounds for dismissing GWI's Complaint because the result would be the same. *See* 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1350 at 105 (noting authority on both sides of the issue of whether a claim for failure to arbitrate can properly be raised on a motion to dismiss for lack of subject matter jurisdiction).

that "[c]ommencing on October 2, 2004, Verizon breached its obligations to GWI under the Interconnection Agreement, when it, *inter alia*, refused to provide new line sharing arrangements to GWI and refused to honor the charges for most existing customers as set in the Interconnection Agreement." Complaint ¶ 29.

In addition to the allegations in the Complaint, Verizon requests that the Court consider the content of a document entitled "Vista Agreement," which is not referred to in GWI's Complaint. *See* Vista Agreement attached as Exh. B to the Declaration of Amy Stern (Docket Item No. 10). Typically, consideration of any documents not attached to the complaint, or not expressly incorporated therein, is not permitted, unless the proceeding is properly converted into one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b)(6). The First Circuit has, however, permitted a limited exception to this rule for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. *See, e.g., Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir. 1991) (considering offering documents submitted by defendants with motion to dismiss claim of securities fraud); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014-15 (1st Cir. 1988) (considering allegedly libelous article submitted by defendants with motion to dismiss).

In this case, the Vista Agreement was entered into by GWI and Verizon and became effective February 1, 2005. *See* Vista Agreement attached as Exh. B to the Stern

3

Dec. The Vista Agreement provides that, in lieu of line sharing, Verizon will sell GWI access to the HFPL through a new "Service." *Id.* In the Vista Agreement, the parties agreed that "all Line Sharing arrangements that [GWI] obtains from Verizon shall be converted to the [Vista] Service and shall be billed at the rates set forth in Attachment 2," which are different from the TELRIC rates previously agreed to in the Interconnection Agreement. *Id*. § 2. Moreover, the Vista Agreement contains an integration clause, expressing the parties' intent that the contract constitutes the entire agreement and that it supersedes all prior agreements with respect to line sharing after February 1, 2005.[2] *Id.* § 4.

Verizon asserts, and GWI does not dispute, that line sharing described in the Interconnection Agreement and the Vista Service are equivalent – both involve access to the HFPL for DSL Internet service. *Id* § 2. With the subject matter of these two agreements being congruent and the Vista Agreement being the most recent expression included in the record of the parties' intent with respect to line sharing, the Court is satisfied that the Vista Agreement is central to GWI's claim that Verizon breached the Interconnection Agreement by refusing to provide new line sharing arrangements and

---

[2] The integration clause specifically provides that the Vista Agreement:

> constitutes the entire agreement between the Parties on the subject matter hereof, and supersedes any prior or contemporaneous agreement, understanding, or representation, on the subject matter hereof, provided, however, that this Agreement shall not affect the provisions pertaining to back billing for Line Sharing charges or billing for Line Sharing charges for the period October 2, 2003 to January 31, 2005 as set forth in that certain Standstill Agreement between the Parties dated October 1, 2004.

Vista Agreement § 4 attached as Exh. B to the Stern Dec. This provision clearly states that the parties' understanding of line sharing arrangements after February 1, 2005, is as expressed in the Vista Agreement, but the integration clause excludes that part of GWI's Complaint alleging breach of contract from October 2, 2004 through January 31, 2005. Neither party explains the significance of this disqualified period of time to Verizon's Motion to Dismiss.

4

honor the TELRIC rates for existing customers. In addition, the Court notes that no unfair prejudice results to GWI as a consequence of the Court's consideration of the Vista Agreement because, as a signatory of the Vista Agreement, GWI had notice of its existence. Therefore, the Court will consider the Vista Agreement in ruling on Verizon's Motion to Dismiss.[3]

## II. DISCUSSION

### A. Dispute Resolution Provision of the Vista Agreement

The Vista Agreement includes a dispute resolution provision, which requires that if the parties are unable to reach agreement the dispute will be resolved by binding arbitration. *Id.* § 15.1. By failing to invoke the dispute resolution provision of the Vista Agreement and commencing suit, Verizon argues that GWI has violated the dispute resolution provision of the Vista Agreement. Verizon asks this Court to enforce the dispute resolution provision of the Vista Agreement and dismiss GWI's Complaint. GWI does not challenge the validity of the Vista Agreement but, rather, responds that the doctrine of judicial estoppel prevents Verizon from relying on the Vista Agreement because such reliance is contradictory to the position Verizon took in another recent case filed in this Court involving Verizon. *See Verizon New England, Inc. v. Maine Public Utilities Commission*, 05-53-B-C.

---

[3] In addition to the Vista Agreement, Verizon also requests that the Court consider the "Standstill Agreement," which the parties entered into on October 1, 2004. The Standstill Agreement, unlike the Vista Agreement, does not include either an integration provision or a dispute resolution provision. Moreover, since Verizon relies exclusively on the dispute resolution provision in the Vista Agreement as a basis for moving to dismiss GWI's Complaint, it is unnecessary for the Court to consider the Standstill Agreement for purposes of the instant motion.

### 1. Application of Judicial Estoppel

In order to successfully assert the doctrine of judicial estoppel a litigant must have "made a bargain" with the court of the first proceeding by making certain representations to the court in order to obtain a particular "benefit" from the court. *United States v. Levasseur*, 846 F.2d 786, 792-93 (1st Cir. 1988). Additionally, the position taken in the second litigation must be "inconsistent with the one successfully and unequivocally asserted by that same party in a prior proceeding." *Brewer v. Madigan*, 945 F.2d 449, 455 (1st Cir. 1991). GWI argues that Verizon's position regarding the validity of the Interconnection Agreement in *Verizon New England, Inc. v. Maine Public Utilities Commission*, 05-53-B-C is patently incompatible with the position Verizon now espouses in this case.

In the prior litigation, between Verizon and the MPUC, the controversy related to whether the MPUC properly interpreted the Interconnection Agreement and whether Verizon is obligated to supply Section 271 services provided for by the Interconnection Agreement at TELRIC rates. The Vista Agreement was not part of the record in that case and, thus, Verizon was free to seek a determination with respect to the MPUC's interpretation of the Interconnection Agreement and its obligations under the terms of the Interconnection Agreement. In this case, GWI asserts that Verizon's contradictory position is that the Interconnection Agreement is void. The Court does not understand that to be Verizon's position here. In fact, Verizon expressly asserts that with the exception of line sharing "the Interconnection Agreement continues to govern other services provided by Verizon to GWI." Reply of Defendant Verizon New England Inc. (Docket Item No. 15) at 3. Verizon's position on the instant motion is that the Vista

Agreement, which was entered into subsequent to the Interconnection Agreement, supersedes the latter and provides the terms for, and governs, the parties' current agreement with respect to line sharing. Verizon's position regarding the specific contractual agreement made by Verizon and GWI in the Vista Agreement is separate from, and not inconsistent with, Verizon's position taken with respect to the interpretation of the Interconnection Agreement in the prior litigation. The Court is not persuaded that this case presents the appropriate circumstance for the application of judicial estoppel.

GWI also asserts that Verizon has not sought MPUC approval to modify or amend the Interconnection Agreement and, thus, that agreement is still in effect and controls the parties' agreement with respect to line sharing. The Court finds GWI's position unpersuasive on this point as well. Although some agreements between ILEC's and CLEC's need approval of the governing regulatory agency, GWI has not cited to any authority that would require that the Vista Agreement be approved by the MPUC. Nor has GWI presented the Court with citation to any authority that prohibits an ILEC, like Verizon, from entering into a commercial rate agreements with a CLEC, like GWI. If GWI chooses to negotiate and enter into commercial rate agreements, even if those agreements relate to matters that the FCC or MPUC may have some regulatory role, it is free to do so, but ultimately it is bound by the terms of the final agreement it makes.

### 2. Enforcement of the Dispute Resolution Clause

In order for the Court to require arbitration, the Court must find that (1) there exists a written agreement to arbitrate; (2) the dispute in question falls within the scope of that arbitration agreement; (3) the party seeking an arbitral forum has not waived its right

7

to compel arbitration. *Bangor Hydro-Elec. Co. v. New Eng. Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155-56 (D. Me. 1999)(citing *Brennan v. King,* 139 F.3d 258, 263-67 (1st Cir. 1998)); *Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 52 (D. Me. 2002). In determining whether there is an agreement to arbitrate, courts apply state contract law. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *Bangor Hydro-Electric Co.*, 62 F. Supp.2d at 156 ("Where the existence of an arbitration agreement is at issue, that question is to be decided with reference to state contract law principles.") (citing *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st Cir. 1999)). The most recent agreement between GWI and Verizon concerning access to, and terms for, line sharing – the Vista Agreement – became effective February 1, 2005 and contains a choice-of-law provision stating that Maine law governs. Vista Agreement § 6.1 attached as Exh. B to the Stern Dec.

### i. The Written Agreement to Arbitrate Disputes

In construing an arbitration agreement under Maine law, general rules of contract interpretation apply, and the agreement is "to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *V.I.P., Inc. v. First Tree Dev. Ltd. Liab. Co.*, 2001 ME 73, ¶ 3, 770 A.2d 95, 96 (citation omitted). Maine has a broad presumption favoring substantive arbitrability. *Id*. (citation omitted). The Vista Agreement's dispute resolution provision states:

> Any controversy or claim arising out of or relating to this
> Agreement, or the breach thereof, shall attempt to be settled first,
> by good faith efforts of the parties to reach mutual agreement, and
> second, if mutual agreement is not reached to resolve the dispute,
> by final binding arbitration as set out in Section 15.3 below.

Vista Agreement § 15.1 attached as Exh. B to the Stern Dec. GWI does not suggest that the Vista Agreement is invalid or unenforceable. Here, the parties clearly intended that any disputes relating to line sharing arising after February 1, 2005 between Verizon and GWI be subject to mandatory alternative dispute resolution, including binding arbitration. Indeed, the express language of the Vista Agreement makes it clear that the parties intended to resolve disputes such as this through good faith informal negotiation, and, failing that, by binding arbitration, rather than through a civil action.

### ii. The Dispute Raised in GWI's Complaint Falls Within the Scope of the Arbitration Agreement

In its Complaint, GWI alleges that starting in October 2004 Verizon has been in breach of its agreement to provide line sharing or HFPL services. GWI does not argue that the dispute does not involve the subject matter of the Vista Agreement. Thus, GWI's breach of contract claim arising after February 1, 2005 clearly falls within the broad language of the Vista Agreement's arbitration clause. In the circumstances described above, the provisions of the Vista Agreement will be central to the resolution of the dispute arising after February 1, 2005, between GWI and Verizon concerning the terms of Verizon's obligation to furnish line sharing services to GWI.[4]

### iii. Verizon has not Waived its Right to Compel Arbitration

In order to assert waiver successfully, a plaintiff must demonstrate that it has been prejudiced. *See Bangor Hydro-Electric Co.*, 62 F. Supp.2d at 160 (citing *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 18 (1st Cir. 1986)). This

---

[4] The Court notes that GWI's Complaint includes in the alleged breach a four-month period – October 2, 2004 through January 31, 2005 – wherein line sharing disputes are not covered by the Vista Agreement. Neither party provides the Court with any argument regarding this four-month period of time. Since there is no basis in the record to compel arbitration regarding the parties' disputes during this four-month period, the Court will order that resolution of them be stayed pending the arbitration of the disputes arising after February 1, 2005.

burden "is a weighty one, particularly where the party seeking arbitration has not answered the complaint, as in this case, or otherwise 'lock[ed] litigious horns." *Id*. (quoting *Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir. 1968)).  Here, it was Plaintiff's decision to initiate this lawsuit rather than comply with the Vista Agreement's dispute resolution requirements.  There is nothing in the record to establish that Verizon has done anything to prejudice GWI's ability to follow the Vista Agreement's dispute resolution and arbitration procedures.  Accordingly, the Court does not find that Verizon has waived its right to arbitration.

## II. CONCLUSION

Pursuant to the plain and unambiguous terms of the most recent agreement between the parties relating to line sharing, the Court finds that a valid arbitration agreement exists and that it covers the issues to be resolved on GWI's claim for breach of contract arising after February 1, 2005.  Accordingly, the Court **ORDERS** the parties to proceed to arbitration in accordance with the terms of the Vista Agreement on GWI's claim for breach of contract after February 1, 2005.  With respect to GWI's breach of contract claim covering the period of October 2, 2004 through January 31, 2005, Plaintiff's claim is **STAYED** until the conclusion of the arbitration.  The parties shall file a monthly status report while the above claim is being arbitrated.  The Court further **ORDERS** that Defendant's Motion to Dismiss be, and it is hereby, **DENIED**.

/s/ Gene Carter_____
GENE CARTER
Senior United States District Judge

Dated this 12th day of October, 2006.